```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE | : | CIVIL ACTION |
| INSURANCE CO. et al., | : | NO. 05-5368 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ARNOLD LINCOW et al., | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

**AND NOW**, this **6th** day of **February, 2009**, it is hereby **ORDERED** that Defendants' motion for summary judgment (doc. no. 406) is **DENIED.**[1]

---

1.  To the extent that Defendants move for summary judgment on the grounds that "[t]he facts completely destroy the possibility of a single conspiracy among all Defendants as alleged by Plaintiffs," their motion will be denied. (Defs.' Mot. for Summ. J. at 22, doc. no. 406.) Defendants argue that the individual defendants "Drs. Lincow, Mintz, Forman, Butow and Hennessy cannot have conspired with 7622 Medical Center or among themselves for the purposes of RICO because they were all employees of 7622 Medical Center" and that these Defendants could not have conspired with "Allied Medical Group or 1900 S.G. Associates" because these were not separate entities but rather "merely registered fictitious names of 7622 Medical Center." (Id. at 21-22 (relying on Pioneer Contracting, Inc. v. Eastern Exterior Wall Sys., Inc., No. Civ.A. 04CV01437, 2005 WL 747221, at *1 (E.D. Pa. Mar. 29, 2005) (noting that a "conspiracy cannot lie against the corporation for the actions of its employees who violate RICO on its behalf. Moreover, employees of a corporation, while acting in the course and scope of their employment, cannot conspire with each other").)) Defendants make similar arguments regarding Mr. Hirsch's relationship to Ogontz Pharmacy and Dr. Lincow's relationship to Medical Management Consulting, Inc., Allied Medical Group, P.C. and Jeffron X-Ray, Inc. Further, Defendants urge the Court to find that "a parent and a wholly owned subsidiary corporation, or two wholly owned subsidiary corporations, are . . . legally incapable of conspiring for the purposes of RICO," although Defendants acknowledge that the law in this area is "[l]ess clear." (Defs.' Mot. for Summ. J. at 20, doc. no. 406.)

Viewing the evidence in the light most favorable to Plaintiffs, the convoluted employment relationships of the individual and corporate Defendants demonstrate only that "a few Defendants are employees of one corporation only and a few are not employees at all." (Pls.' Resp. to Defs.' Mot. for Summ. J. at 20, doc. no. 435.) During oral argument, defense counsel initially argued that "Dr. Lincow, Dr. Forman, Dr. Mintz, Dr. Butow, Dr. Hennessy, all the individuals, they were all employees of 7622 Medical" but later acknowledged that "Okay, possibly one of them was a contractor . . . ." (7/14/08 Hr'g Tr. 39:22-25.) Plaintiffs' counsel argued that "Dr. Lincow is not a employee of 7622 Medical Center. Dr. Lincow is allegedly an employee of Medical Management Consulting, Incorporated" and that other defendants "are employed by different corporations" and may or may not be independent contractors. (Id. 47:2-8; 47:20-21.) At this stage of the litigation, the issue of which corporate entity employed which individual defendant is one that is appropriate for a jury.

To the extent that Defendants move for summary judgment on the grounds that "Defendants and the alleged 'enterprise' are identical," their motion will be denied. (Defs.' Mot. for Summ. J. at 23, doc. no. 406.) "[T]o establish liability under [18 U.S.C. ] § 1962(c) one must allege and prove the existence of two separate entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions Ltd. v. King, 533 U.S. 158, 161 (2001); see also id. at 165 (noting that "the statute requires no more than the formal legal distinction between 'person' and 'enterprise' (namely incorporation)"). Defendants argue that Plaintiffs' allegations fail to satisfy the distinctiveness requirement of § 1962(c) because "Plaintiffs have alleged nothing more than an enterprise consisting of the defendants 'associated in fact.'" (Defs.' Mot. for Summ. J. at 25, doc. no. 406). In support of this argument, Defendants rely primarily on Healthguard of Lancaster, Inc. v. Gartenberg, in which Judge Baylson held that plaintiff's RICO claim, alleging "an enterprise identical to Defendants" did not aver distinctiveness adequately. No. 2004 WL 632722, at *7 (E.D. Pa. Mar. 5, 2004); see also 7/14/08 Hr'g Tr. 37:15-18.

In response, Plaintiffs argue that "the existence of an enterprise consisting of the association-in-fact of all of the named Defendants is proper because . . . the courts have held that even a complete overlap between the defendant persons and members of an association-in-fact enterprise does not defeat the distinctiveness requirement." (Pls.' Resp. to Defs.' Mot. for Summ. J. at 24, doc. no. 435.) In support of this argument, Plaintiffs rely primarily on the Third Circuit's decision in Jaquar Cars, Inc. v. Royal Oaks Motor Car Co., Inc. and Judge

Tucker's decision in <u>State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr., Inc.</u>, both of which considered the distinctiveness requirement of § 1962(c). See <u>Jaguar Cars, Inc.</u>, 46 F.3d 258, 268 (3d Cir. 1995) ("[A] viable § 1962(c) action requires a claim against defendant 'persons' acting through a distinct 'enterprise.' But alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement."); <u>Midtown Med. Ctr., Inc.</u>, No. 02-7389, 2005 WL 627969, at *4-5 (E.D. Pa. Mar. 14, 2005) ("A complete overlap between Defendant persons and the members of an association-in-fact enterprise does not defeat the distinctiveness requirement."); <u>see also</u> <u>Perlberger v. Perlberger</u>, No. Civ. A. 97-4105, 1999 WL 79503, at *2 (E.D. Pa. Feb. 12, 1999) ("Consistent with the Court's previous ruling on the distinctiveness requirement, a complete overlap between the defendant persons and the members of an association-in-fact enterprise does not defeat the distinctiveness requirement.")

In considering these arguments, the Court acknowledges that there is substantial confusion in this circuit (and in others) about whether a complete overlap between the enterprise and the defendants is fatal to a RICO claim. <u>See generally</u> Laurence A. Steckman, <u>Rico Section 1962(c) Enterprises and the Present Status of the "Distinctness Requirement" in the Second, Third and Seventh Circuits</u>, 21 Touro L. Rev. 1083, 1243-45 (2006) ("Overlap issues are treated inconsistently in the Third Circuit, with different judges taking the following positions: (a) total overlap between the person and enterprise is not permissible; (b) total overlap is permissible; (c) no overlap is permissible; and (d) some overlap is permissible."). Viewing the evidence in the light most favorable to Plaintiffs, however, Defendants have not met their burden. While the parties' papers have focused on the named Defendants, the Court notes that Plaintiffs have consistently maintained that "the enterprise also includes unnamed co-conspirators including patients and personal injury attorneys as well as employees and independent contractors of Defendants." (Pls.' Resp. to Defs.' Mot. for Summ. J. at 24, doc. no. 435; Pls.' RICO Case Statement, doc. no. 47; Second Amended Compl. ¶ 91, doc. no. 206.) Given the complexity of the employment and incorporation relationships discussed above, the Court cannot foreclose the possibility that the alleged "association-in-fact" included unnamed co-conspirators. Thus, under either "overlap analysis," Defendants are not entitled to summary judgment on Plaintiffs' RICO claim.

Defendants motion for summary judgment will also be denied to the extent that it is based on the arguments that, at all relevant times, "Mr. Hirsch was cooperating with the government's investigation of 7622 Medical Center and Dr. Lincow . . . [a]s such, he could not as a matter of law conspire to

commit fraud because he lacked the necessary mens rea" or "there is no evidence that [Mr. Hirsch] knowingly made any false statement to Plaintiffs with the intent to defraud." (Defs.' Mot. for Summ. J. at 26 & 30, doc. no. 406.)  In support of these claims, Defendants rely only on Mr. Hirsch's verified statement, and on those of his co-defendants. (See generally Defs.' Mot. for Summ. J. at Exs. 1 & 5, doc. no. 406; Defs.' Reply to Pls.' Resp. to Defs.' Mot. for Summ. J., doc. no. 443.) In opposition, Plaintiffs have relied on multiple documents, including rent checks from Dr. Lincow's other tenants, bills of Ogontz Pharmacy, and the expert report of Jacqueline Hillgrube to argue that a reasonable jury may find that "a kickback arrangement between the Defendants [existed], that Defendant Hirsch participated in a conspiracy to commit fraud with the Defendants, [and] violated the insurance fraud statute and the RICO statute." (Pls.' Resp. to Defs.' Mot. for Summ. J. at 29, Exs. F, G & I, doc. no. 435.) Viewing the evidence in the light most favorable to Plaintiffs, a genuine issue of material fact exists with respect to Mr. Hirsch's involvement, if any, in the alleged conspiracy. Moreover, the Court notes that Plaintiffs have presented sufficient evidence in support of their argument that the admission or exclusion of Jacqueline Hillgrube's report would not impact the Court's conclusion regarding summary judgment. (See 12/30/08 Order, doc. no. 499 (scheduling Daubert hearing regarding Jacqueline Hillgrube's report)).

To the extent that Defendants move for summary judgment on the grounds that there is no evidence that Drs. Lincow, Mintz, Forman, Butow and Hennessey "knowingly made any false statements to Plaintiffs with the intent to defraud," their motion will be denied. (Defs.' Mot. for Summ. J. at 33-40, doc. no. 406.) Again, the Court notes that Defendants rely only on their own verified statements for support, whereas Plaintiffs have submitted the expert report of Dr. Gregory Mullford, the deposition testimony of Defendants' patient, Doris Carter, and the deposition testimony of Dr. Mintz, who admitted to allowing Dr. Forman to use his prescription pad to prescribe medicine. (Pls.' Resp. to Defs.' Mot. for Summ. J., Exs. B, J, K, O, doc. no. 435.) Moreover, during oral argument, defense counsel admitted that "[t]here is some evidence of altered medical reports". (7/14/08 Hr'g Tr. 41:18-21.) This fact, combined with other record evidence, is sufficient to overcome Defendants' motion for summary judgment.

Finally, to the extent that Defendants move for summary judgment on the grounds that Plaintiffs' payment to third-party claimants of $1,245,625 and their expenditure of $1,024,690 in legal defense costs is "irrelevant," their motion will be denied. (Defs.' Mot. for Summ. J. at 40 & 49, doc. no. 406.) The Court notes that the composition of Plaintiffs' damages, if any, is

**AND IT IS SO ORDERED.**

<pre>
                              S/Eduardo C. Robreno
                              EDUARDO C. ROBRENO, J.
</pre>

---

more appropriately decided during trial, rather than in the context of a motion for summary judgment.  To the extent this issue remains relevant during trial, the Court will entertain argument from the parties at that time.  In so ruling, however, the Court notes that, at least with respect to the issue of whether Plaintiffs' third-party damages claims are relevant, Judge Tucker recently held in a similar case that "plaintiffs were the target of the scheme thereby creating a direct relation between the injuries asserted and the injurious conduct.  Defendants' actions were a substantial factor in the events resulting in Plaintiffs' injuries.  As noted in Hecht, a RICO act proximately causes injury if it was a 'substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence.'" State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr., Inc., No. 02-7389, 2007 WL 3224542, at *4 (E.D. Pa. Oct. 23, 2007) (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990)).