IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE | : | CIVIL ACTION |
| INSURANCE CO. et al., | : | NO. 05-5368 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ARNOLD LINCOW et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    JUNE 2, 2010

TABLE OF CONTENTS

I.    BACKGROUND...............................................2
II.   STANDARD OF REVIEW.......................................4
      A. Rule 50..............................................4
      B. Rule 59..............................................6
III.  DEFENDANTS' POST-TRIAL MOTIONS...........................7
      A. Waiver...............................................9
      B. Evidentiary Issues..................................17
         1. Legal Standard...................................17
         2. Common Law Fraud Claim...........................18
         3. RICO Claim.......................................21
         4. Statutory Insurance Fraud Claim..................23
         5. Causation........................................24
         6. Defendants' Counterclaim.........................27
      C. Alleged Trial Errors................................29
         1. Legal Standard...................................29
         2. Admission of Exhibit P-77........................30
         3. Jury Instructions................................36
         4. Cumulative Effect of Errors......................45
            a. Videotaped Deposition of Dr. Lincow..........46
            b. Gene Veno's Testimony........................47
            c. Dora Dixon-Jefferson's Testimony.............48
            d. Steven Hirsch's Cross-Examination............49
      D. Defendant Mintz's Arguments.........................51
         1. Procedural Background............................51
         2. Waiver...........................................52
         3. Sufficiency of the Evidence Against Mintz........53
IV.   DAMAGES................................................55

    A. Background.........................................55
    B. Damages Evidence..................................57
    C. Election between Treble and Punitive Damages..........58
    D. Motion to Amend the Judgment to include Steven Hirsh and
       Lolo, Inc............................................58
    E. Motion to Treble Damages...........................59
    F. Motion for Attorneys' Fees.........................61
V. CONCLUSION.............................................64

## I.  BACKGROUND

In October 2005, Plaintiff insurance companies ("State Farm" or "Plaintiffs") brought RICO and fraud actions against certain health-care providers ("Defendants") who were allegedly involved in various schemes to defraud Plaintiffs by billing them for medical services that were either never provided or provided unnecessarily.  Certain Defendants filed a counterclaim seeking unpaid benefits.

Plaintiffs alleged that Defendants were members of a conspiracy that sharply inflated the costs of medical care for car accident victims.  State Farm alleged that Defendants schemed to drastically inflate the medical bills of car accident victims by systematically prescribing tests and treatments, as well as prescriptions and medical equipment -- whether medically necessary or not -- and then routinely billed State Farm for additional treatments that were never provided.  At trial, Plaintiffs' proof of Defendants' fraud consisted of State Farm's claim files, testimony of patients, testimony of physicians working at Defendant medical facilities, testimony of Defendant

physicians and expert testimony.

Defendants deny the charges and claim, instead, that all of the billing statements to State Farm reflected services which were medically necessary and consistent with the standard of care.

On March 26, 2009, after a four week jury trial, the jury awarded Plaintiffs $4,049,741.00 against all Defendants jointly and severally (doc. no. 593).[1] Additionally, individual Defendants were also found liable for punitive damages totaling $11.4 million. (Id.) The jury also found in favor of Plaintiffs on Defendants' counterclaims.

Defendants and Plaintiffs have both filed post-trial motions with extensive briefing. On April 27, 2009, Defendants filed a motion for post-trial relief pursuant to Fed. R. Civ. P. 50 (doc. no. 613). On May 11, 2009, Plaintiffs submitted their response to Defendants' motion for post-trial relief (doc. no. 661). Plaintiffs filed sealed motions to alter or amend the judgment (doc. no. 615) and for attorneys' fees and costs (doc. no. 616).

On August 21, 2009, Defendants filed their brief in support of the motion for post-trial relief (doc. no. 828). On

---

[1]    All Defendants were represented at trial by the same counsel and all offered the defense that the services at issue provided were medically necessary and consistent with the standard of care.

November 5, 2009, Plaintiffs submitted their brief in opposition to Defendants' motion for post-trial relief (doc. no. 919).  On November 30, 2009, Defendants filed their rebuttal brief in support of motion for post-trial relief (doc. no. 939).  On December 15, 2009, Plaintiffs filed a motion for leave to reply to Defendants' rebuttal brief (doc. no. 955).[2]  The Court heard oral argument on the motions on February 18, 2010.

## II.  STANDARD OF REVIEW

### A. Rule 50 motion for judgment as a matter of law

Rule 50 provides that, in the aftermath of a jury trial, a court may grant a motion for judgment as a matter of law if it determines that there was "no legally sufficient evidentiary basis for a reasonable jury to have found for a particular party on an issue," and that, without a favorable finding on that issue, the party cannot maintain his claim under controlling law.  Fed. R. Civ. P. 50(a)(1).  In determining whether to grant judgment as a matter of law, the court "must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the 'minimum quantum of evidence from which a jury might reasonably afford relief.'"  Glenn Distribs. Corp. v. Carlisle Plastics, Inc., 297 F.3d 294, 299 (3d Cir. 2002) (quoting Mosley v. Wilson, 102 F.3d

---

[2]     Plaintiffs move for leave to file a reply to Defendants' rebuttal brief (doc. no. 955).  The Court grants this motion and references Plaintiffs' reply brief.

85, 89 (3d Cir. 1996)).  Indeed, a court may grant judgment as a matter of law "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  LePage's, Inc. v. 3M, 324 F.3d 141, 145-46 (3d Cir. 2003) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)).

In this endeavor, "[t]he court may not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury," Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 691 (3d Cir. 1993), but rather may grant a Rule 50 motion only "if upon review of the record it can be said as a matter of law that the verdict is not supported by legally sufficient evidence."  Id. at 691-92; see also LePage's, at 145-46 ("[R]eview of the jury's verdict is limited to determining whether some evidence in the record supports the jury's verdict."); Glenn Distribs., 297 F.3d at 299 (stating that "[t]he standard for granting summary judgment under Rule 56 'mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a)'") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

Upon the renewed motion of a party, Fed. R. Civ. P. 50(b) allows the trial court to enter judgment as a matter of law

at the conclusion of a jury trial notwithstanding a jury verdict for the opposing party. Such judgment may be entered under Rule 50(b) "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001). In deciding whether to grant this "sparingly invoked remedy," the court must "refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury." Marra v. Phila. Housing Auth., 497 F.3d 286, 300 (3d Cir. 2007).

**B. Rule 59 Motion for New Trial**

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . ." Fed. R. Civ. P. 59(a)(1). The decision whether to grant a new trial following a jury verdict is within the discretion of the district court and such requests are disfavored. See, e.g., Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991) ("new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience"). The standard

by which a motion for a new trial is judged depends on the grounds upon which the motion rests.

Where the asserted basis for a new trial involves a matter originally within the trial court's discretion - e.g., evidentiary rulings - the court has more latitude to grant a motion for a new trial. Klein v. Hollins, 992 F.2d 1285, 1289-90 (3d Cir. 1993). The court's inquiry in evaluating a motion for a new trial on the basis of trial error is twofold. It must first determine whether an error was made in the course of the trial, and then must determine "whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" Farra v. Stanley-Bostitch, Inc., 838 F. Supp. 1021, 1026 (E.D. Pa. 1993) (Robreno, J.) (citing Bhaya v. Westinghouse Elec. Corp., 709 F. Supp. 600, 601 (E.D. Pa. 1989) (quoting Fed. R. Civ. P. 61), aff'd, 922 F.2d 184 (3d Cir. 1990), cert. denied, 501 U.S. 1217 (1991); see Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 133 (3d Cir. 1965) ("If the evidence in the record, viewed from the standpoint of the successful party, is sufficient to support the jury verdict, a new trial is not warranted merely because the jury could have reached a different result.").

## III. DEFENDANTS' POST-TRIAL MOTIONS

Defendants, in their motion for post-trial relief (doc.

no. 613) advance a potpourri of arguments including: (1) Plaintiffs failed to prove liability under the civil RICO statute, 18 U.S.C. § 1962(c) (2000), as Plaintiffs did not prove an enterprise separate, distinct and apart from Defendants; (2) Plaintiffs failed to prove the existence of a RICO conspiracy; (3) Plaintiffs failed to introduce sufficient evidence to prove Defendants' conduct was the proximate cause of any of State Farm's alleged damages; (4) the verdict under RICO against Dr. Mintz, Dr. Forman, Dr. Butow and Dr. Hennessy is not supported by sufficient evidence; (5) the $11.4 million award of punitive damages is unwarranted and violates Defendants' due process rights; (6) the verdict against Defendants on Plaintiffs' claim under the Pennsylvania Insurance Fraud Act, 18 Pa. C.S. § 4177, is not supported by sufficient evidence; (7) the verdict against Defendants on Plaintiffs' claim of common law fraud is not supported by sufficient evidence; (8) the trial court erred in its instruction to the jury; (9) the trial court incorrectly excluded Gene Veno's testimony; (10) the trial court incorrectly refused to admit Dora Dixon-Jefferson's deposition testimony at trial; (11) the trial court incorrectly refused to allow defense counsel to cross examine Steven Hirsh regarding a blank prescription; (12) the trial court incorrectly permitted the testimony of State Farm employees regarding claim files; (13) the trial court incorrectly permitted the testimony of Dr. Gregory

Mulford; (14) the trial court incorrectly refused to correct improper comments in Plaintiffs' opening and closing arguments; and (15) the trial court incorrectly allowed Plaintiffs to introduce Dr. Lincow's videotaped deposition. (See Doc. no. 613.)

Accordingly, Defendants ask for judgment as a matter of law and/or a new trial. The Court will analyze Defendants' arguments in turn.

## A. Waiver

As a preliminary matter, Plaintiffs argue that Defendants' renewed motion for judgment as a matter of law must fail because Defendants "neglected significant substantive prerequisites" before submitting the instant motion. (Pls.' Br., doc. no. 919 at 3.) Plaintiffs claim that defense counsel failed to move for a directed verdict on sufficiency of the evidence claims and, therefore, Defendants have waived these arguments and may not reassert them now. Moreover, Plaintiffs argue that Defendants failed to specifically identify: (1) the judgment sought; (2) the facts which entitle Defendants to judgment as a matter of law; and (3) the law supporting these claims.

### 1. Rule 50 waiver standard

"It is well settled that a party who does not file a Rule 50 motion for judgment as a matter of law at the end of the evidence is not thereafter entitled to have judgment entered in its favor notwithstanding an adverse verdict on the ground that

there is insufficient evidence to support the verdict."
Greenleaf v. Garlock, Inc., 174 F.3d 352, 364 (3d Cir. 1999)
(rejecting defendant's argument that a proposed jury instruction
was a request for judgment as a matter of law, and waiving
defendant's argument as to the sufficiency of the evidence
claim).  The Third Circuit has stated that a motion for judgment
as a matter of law pursuant to Rule 50(b) must be preceded by a
Rule 50(a) motion "sufficiently specific to afford the party
against whom the motion is directed with an opportunity to cure
possible defects in proof which otherwise might make its case
legally insufficient."  Lightning Lube, 4 F.3d at 1173 (citing
Acosta v. Honda Motor Co., 717 F.2d 828, 831-32 (3d Cir. 1983)).
Such a motion properly places the non-movant and the court on
notice of the movant's claims.  Therefore, "a defendant's failure
to raise an issue in a Rule 50(a)(2) motion with sufficient
specificity to put the plaintiffs on notice waives the
defendant's right to raise the issue in their Rule 50(b) motion."
 Williams v. Runyon, 130 F.3d 568, 571-72 (3d Cir. 1997).

        The failure to move for a directed verdict at the close
of all evidence "does more than limit an aggrieved party's remedy
to a new trial.  In this Circuit, it wholly waives the right to
mount any post-trial attack on the sufficiency of the evidence."
Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir. 1991)
(Defendant waived the right to judgment n.o.v. when it failed to

renew its motion for a directed verdict at the close of all the evidence); see also Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 132 (3d Cir. 1965) (Defendant, at the close of Plaintiff's evidence, made a motion 'for a compulsory non suit' which was treated as analogous to a motion for a directed verdict under the rule.  The motion was denied and the defendant then offered evidence in support of the defenses pleaded in its answers.  The motion was not renewed at the close of all the evidence.  The defendant made no motion for a directed verdict at the close of the cross-claimant's case or at the close of all the evidence); Follette v. Nat'l Tea Co., 460 F.2d 254, 255 (3d Cir. 1972) (Defendant failed to moved for a directed verdict at the end of plaintiff's case or at the conclusion of the entire case). Consequently, failure to move with sufficient specificity to permit the Court to intelligently revisit the issue, waives the party's right to Rule 50 judgment.

As the Third Circuit has noted, "[t]he provisions of the rule are clear. . . . [the rule] is as plainly described as we believe to be possible.  The rule has been in effect for a very considerable length of time.  We do not see any reason to obfuscate a plain rule by adding a gloss to it to aid those who, for reasons unknown to us, have not seen fit to follow it." Lowenstein v. Pepsi-Cola Bottling Co. of Pennsauken, 536 F.2d 9, 12 (3d Cir. 1976) (rejecting defendant's argument that a request

for a binding instruction should be treated as satisfying the prerequisite for a judgment n.o.v.); see also Mallick v. Int'l Broth. of Elec. Workers, 644 F.2d 228, 234 (3d Cir. 1981) (same) ("We, however, do not deem [Rule 50] whose underpinnings rest in the United States Constitution to be a mere technicality to be readily dispensed with. Moreover, judicial efficiency may be better served when jury verdicts receive the respect to which they are entitled under the Seventh Amendment.").

### 2. Defendants' Rule 50 motions at trial

Defense counsel made two statements implicating a Rule 50 motion. Each is addressed in turn.

### a. At the conclusion of Plaintiffs' case

Defense counsel argues that he made an oral Rule 50 motion on March 16, 2009, when Plaintiffs rested their case in chief.

| Plaintiffs' counsel: | That might be the last witness, Your Honor. |
|---|---|
| The Court: | Okay, Well that might be a good time to break, but we could maybe argue the Rule [50][3] now and get ready for tomorrow, and then tomorrow first thing in the morning |

---

[3]     The transcript incorrectly reads "Rule 15". (Trial Tr. at 61, Mar. 16, 2009.)

- 12 -

|                        |                                           |
| ---------------------- | ----------------------------------------- |
|                        | we can do those objections.  Do you       |
|                        | have the transcript?                      |
| Plaintiffs' counsel:   | Yes, Your Honor.                          |
| The Court:             | Okay. Then I can take a look at the       |
|                        | transcript.                               |
| Plaintiffs' Counsel:   | Okay.                                     |
| Defense Counsel:       | Your Honor, at this point I would         |
|                        | just basically incorporate all of         |
|                        | the arguments I have made. I don't        |
|                        | think its necessary to burden the         |
|                        | Court on a long argument.                 |
| The Court:             | Well, I'm back in here --                 |
| Defense Counsel:       | I understand that. I think Your           |
|                        | Honor needs to review those --            |
| The Court:             | Right.                                    |
| Defense Counsel:       | -- then I would be prepared to            |
|                        | start.                                    |
| The Court:             | Well, you argue right now if you          |
|                        | want to rest on what you have said        |
|                        | so far?                                   |
| Defense Counsel:       | Yes, I do, Your Honor. I don't want       |
|                        | to belabor that.                          |
| The Court:             | So, do you want to break and then         |
|                        | come in tomorrow morning at 9:30          |

|                    |                                                      |
|--------------------|------------------------------------------------------|
|                    | and then we will play [Plaintiffs' video deposition tape] and then you are ready to go. |
| Defense Counsel:   | I will be ready to go, sir.                          |
| The Court:         | Okay. Very good.                                     |

(Trial Tr. at 61-63, Mar. 16, 2009.)

## b. At the charging conference

During the March 24, 2009, charging conference in Chambers, defense counsel explicitly moved for a directed verdict.

|                    |                                                      |
|--------------------|------------------------------------------------------|
| Defense Counsel:   | I would like to make a motion for a direct[ed][4] verdict on the issue of RICO, because I do not believe the evidence supports the finding by a preponderance of the evidence that there was an enterprise separate and apart from the defendants themselves. That issue has been previously thoroughly briefed to the Court. |
| The Court:         | It has.                                              |
| Defense Counsel:   | I don't think I should have to –                     |

---

[4]    The transcript incorrectly reads "directive".  (Trial Tr. at 22, Mar. 24, 2009.)

|                   |                                                  |
| ----------------- | ------------------------------------------------ |
|                   | with the Court's permission, I                   |
|                   | would just like to make that motion              |
|                   | and leave it at that.                            |
| The Court:        | Absolutely.                                      |
| Defense Counsel:  | Thanks.                                           |
| The Court:        | Okay. I will take that under                     |
|                   | advisement, and we'll submit the                 |
|                   | case to the jury and reserve                     |
|                   | judgment on that issue.                          |
| Defense Counsel:  | Thank you.                                        |

(Trial Tr. at 22-23, Mar. 24, 2009.)

Defendants further claim that all of the issues raised in their motion for post-trial relief were previously raised in pre-trial dispositive motions, motions in limine, objections to Plaintiffs' Rule 26(a)(3) disclosures or at trial. (Defs.' Br., doc. no. 939 at 1-2.)

### 3. Analysis

The Court agrees with Plaintiffs that the only issue identified in the motion for a directed verdict under Rule 50 is the issue of the distinctiveness requirement of RICO. Defense counsel's vague comments at the close of Plaintiffs' case did not sufficiently specify the contested issues in order to put the Court and Plaintiffs on notice of the deficiencies claimed by Defendants.

In this four week long jury trial, and lengthy pre-trial discovery lasting over three years, a general incorporation of "all of the arguments I have made" is insufficient to put the Court and the Plaintiffs on notice of the alleged deficiencies claimed by Defendants.  Moreover, Defendants' renewed 50(a) motion expressed at the charge conference specified only the issue of distinctiveness requirement, and no other issue.

Accordingly, aside from the issue of RICO distinctiveness, Defendants' motion for judgment as a matter of law based upon the sufficiency of the evidence to support Plaintiffs' claims will be denied.

Moreover, although Defendants indicated they would argue RICO distinctiveness in their motion for post-trial relief (doc. no. 613), they did not argue this issue in their later briefs. (See docs no. 828 & 939.)  Accordingly, those arguments which Defendants have not addressed in their briefs, including RICO distinctiveness, will be deemed abandoned and will not be addressed by the Court.[5]  See Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997) ("an argument consisting of no more than a

---

[5]     Defendants, in briefing supporting their motion, do not argue every claim for post-trial relief made in their original motion. (Compare Defs.' Br., doc. no. 828; Defs.' Mot., doc. no. 613.)  Defendants raised the following issues in their motion but did not later address them in their briefs: (1) RICO distinctiveness; (2) Dr. Gregory Mulford's expert testimony; and (3) Plaintiffs' opening and closing arguments.  Accordingly, those arguments, including RICO distinctiveness, will be deemed abandoned and will not be addressed by the Court.

conclusory assertion . . . will be deemed waived.") (citing

Pennsylvania v. U.S. Dep't of Health & Human Serv., 101 F.3d 939,

945 (3d Cir. 1996) ("arguments mentioned in passing, but not

squarely argued, will be deemed waived")).[6]

## B. Evidentiary Issues

Even if Defendants had properly moved for judgment as a

matter of law based on the sufficiency of Plaintiffs' evidence,

the Court finds that Defendants' motion would still fail.  For

the sake of completeness, the Court will analyze each of

Defendants' arguments regardless of the issue of waiver.

### 1. Legal Standard

Regarding arguments of insufficient evidence, the

Third Circuit directs:

> Such a motion should be granted only if, viewing the
> evidence in the light most favorable to the nonmovant
> and giving it the advantage of every fair and
> reasonable inference, there is insufficient evidence
> from which a jury reasonably could find liability. In
> determining whether the evidence is sufficient to
> sustain liability, the court may not weigh the
> evidence, determine the credibility of witnesses, or
> substitute its version of the facts for the jury's

---

[6]     Both waiver and abandonment, although technically
different, reflect the legal doctrine that a party must assert a
legal position in a timely and substantive manner.  Here, first,
because of Defendants' insufficient Rule 50 motion at trial, all
issues relating to sufficiency of the evidence aside from RICO
distinctiveness, are waived.  Second, because Defendants have
failed to fully brief certain arguments that were tersely
addressed in their motion, those arguments will be deemed
abandoned.

version.

Lightning Lube, 4 F.3d at 1166 (internal citations omitted).
"[The] [e]ntry of judgment as a matter of law is a sparingly
invoked remedy[.]" Marra, 497 F.3d at 300 (internal quotation
omitted).

### 2. Common law fraud claim

Defendants rely on a Fifth Circuit case, Allstate v.
Receivable Finance, to argue that they are entitled to judgment
as a matter of law. 501 F.3d 398 (5th Cir. 2007). Defendants
argue that in the instant case, as was found in Receivable
Finance, Plaintiffs have not provided sufficient evidence of
actual reliance by Plaintiffs on the alleged misrepresentations
of Defendants.

In Receivable Finance, insurers brought a fraud claim
against a group of chiropractic clinics, chiropractors and
employees that specialized in treating patients who had suffered
trauma in automobile accidents or through on-the-job injuries.
Plaintiff insurers alleged that defendants grossly and knowingly
billed for unnecessary and excessive chiropractic and/or medical
diagnoses, treatments, procedures, services and consultations.
The case proceeded to jury trial and the jury returned a verdict
finding that defendants committed fraud against the insurers.
The district court issued an amended final judgment awarding
damages in favor of the insurers and an appeal followed. Id. at

401-05.  The Fifth Circuit reversed and found that the evidence presented at trial was insufficient to show that insurers actually relied on misrepresentations made by defendants when settling claims, as required under Texas law, to establish common law fraud.  The court also found that the damages award was based on "conjecture and speculation" as to how much the defendants obtained through their fraud.  Id. at 414.

Receivable Finance is distinguishable[7] because, unlike in Receivable Finance, Plaintiffs in the instant case produced a corporate designee who testified on behalf of State Farm specifically on the issue of reliance.

In this case, Plaintiffs' corporate witness, Bryan Acornley, testified that he reviewed all of the log notes of the claims representatives that handled the claims.  Mr. Acornley also  testified, in detail, about Plaintiffs' reliance on Defendants' medical records and how such records dictate the value of insurance claims.  (Trial Tr. 56-61, March 16, 2009.) Mr. Acornley testified that: (1) the evaluation of payments of the third party claims was based on Defendants' medical records submitted by third party plaintiffs; (2) payments to third party plaintiffs were a result of these medical records; and (3) payments were made to defense counsel in these third party claims

---

[7]      In Receivable Finance, the plaintiff brought claims against defendants alleging common law fraud and conspiracy under Texas law.

in order to defend State Farm insureds from medical injury claims relying on Defendants' medical records. (<u>Id.</u> at 56-57.) Moreover, Mr. Acornley testified that the analysis of the cases that led to settlement decisions were based on the medical reports and diagnostic tests of Defendants. (<u>Id.</u> at 56, 92.)

The Court finds that Mr. Acornley's testimony satisfied the reliance requirement under common law fraud. Whereas the <u>Receivable Finance</u> court found that the plaintiff's evidence was "sparse and unspecific," Mr. Acornley's testimony was detailed and pointed to first hand knowledge that State Farm paid money to resolve claims of patients treated by Defendants because State Farm believed and relied on Defendants' representations as reflected in the medical files. <u>See</u> <u>Receivable Finance</u>, 501 F.3d at 408. Mr. Acornley testified directly to this point and indicated that Plaintiffs had, in fact, relied on the patients' records in the evaluation and payment of the claims. In contrast to the record of <u>Receivable Finance</u>, Plaintiffs provided evidence about the specific customs and practices of State Farm. Mr. Acornley's evidence, as a corporate designee for State Farm, was not speculative or without basis. Thus, State Farm showed actual reliance.[8]

---

[8]    In connection to this argument, Defendants claim that the Court improperly admitted Exhibit P-77, a summary document relied upon by Mr. Acornley in his testimony. (Defs.' Br., doc. no. 828 at 46-58.) Defendants, in later briefs, seem to argue that only if Exhibit P-77 and Mr. Acornley's testimony are

### 3. RICO claim

As with the common law fraud argument, Defendants argue that Plaintiffs failed to present sufficient evidence that they relied on Defendants' misrepresentation as it relates to Plaintiffs' RICO claim.  (Defs.' Br., doc. no. 828 at 18-24.)  Defendants also argue Plaintiffs failed to present evidence that someone involved in the third party claims relied on Defendants' bills and records with adjudicating those cases.  Consequently, Defendants argue they are entitled to judgment as a matter of law on Plaintiffs' RICO claim.

The Supreme Court, in <u>Bridge v. Phoenix Bond & Indem. Co.</u>, held that reliance is not an element of a RICO claim predicated on mail fraud.  553 U.S. 639, 128 S.Ct. 2131 (2008).  "[A] plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."  <u>Id.</u> at 2144.  In light of <u>Bridge</u>, Defendants concede that they are not entitled to judgment as a matter of law on Plaintiffs' RICO claims.  However, Defendants still argue that Plaintiffs failed "to present any evidence of actual reliance by <u>anyone</u> . . . ."  (Defs.' Br., doc. no. 828 at 22.)  This argument is unavailing as to both first and

---

excluded is <u>Receivable Finance</u> distinguishable.  (Defs.' Br., doc. no. 939 at 3-4.)  The Court, as discussed <u>infra</u>, finds that it did not err in admitting this exhibit.

third party claims.

As to the first party claims, the Court finds that Plaintiffs presented ample evidence at trial from which a reasonable jury could find that Plaintiffs relied on Defendants' misrepresentations including, but not limited to: (1) the testimony of Bryan Acornley; (2) medical reports directed to attorneys (Trial Ex. P-31); (3) the testimony of R. Carter[9] (Trial Tr. at 4-5, Mar. 10, 2009); (4) the testimony of Dr. Forman[10] (Trial Tr. at 30-31, Mar. 5, 2009); and (5) the testimony of V. Riggins[11] (Trial Tr. at 41-42, Mar. 17, 2009).

Additionally, as to the third party claims, viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could find that various factfinders (including judges, juries) and third parties (defense attorneys, defendants, and insurance companies) also relied on these records.[12]

---

[9]     Robert Carter, a patient of Defendants, testified that his medical records were used in claims against State Farm and at trial.

[10]     Defendant Dr. Forman testified that the medical records were relied upon by insurance companies and attorneys.

[11]     Vivian Riggins, a patient of Defendants, identified that she utilized her medical records in litigation or claims.

[12]     To the extent that Defendants argue that Plaintiffs have not presented sufficient evidence to support a jury verdict that Defendants engaged in violations of the RICO statute, the Court finds that Plaintiffs provided sufficient evidence. Plaintiffs presented evidence that Defendants associated as a RICO enterprise comprised of various medical facilities and practitioners engaging in a continuous pattern of racketeering

### 4. Statutory insurance fraud claim

Defendants argue, similar to their previous arguments, that Plaintiffs did not produce sufficient evidence of actual reliance on Defendants' actions under 18 Pa. C.S. § 4117. Pennsylvania's Insurance Fraud Statute, 18 Pa. C.S. § 4117, makes it a crime to, underline inter alia: (1) knowingly; (2) present any false, incomplete or misleading information; (3) concerning any fact or thing material to a claim; (4) to any insurer.  18 Pa. C.S. § 4117(a)(2).[13]

Defendants admit that the text of the statute does not identify reliance as an element of Pennsylvania's Insurance Fraud Statute.  Although no Pennsylvania Court has so held, they argue that by analogy to the Pennsylvania Consumer Protection Law, 73 Pa. C.S. § 201-9.2(a), the Pennsylvania Supreme Court would find that a plaintiff is required to prove justifiable reliance as part of his case in chief.  See Hunt v. U.S. Tobacco Co., 538

---

activity involving the submission of false and fraudulent insurance claims.

[13]    The Insurance Fraud Statute is penal in nature and most of its provisions relate to criminal prosecutions. Subsection (g), however, authorizes an insurer that is injured as a result of a violation of the statute's criminal provisions to bring a civil action to recover compensatory damages, investigative costs, and attorneys' fees.  Treble damages may also be awarded where a defendant "has engaged in a pattern of violating this section."  Under Pennsylvania law, non-penal provisions of a penal statute are liberally construed.  See Commonwealth by Creamer v. Monumental Properties, Inc., 329 A.2d 812, 816 (Pa. 1974).

F.3d 217, 222-223 (3d Cir. 2008) (holding that the Pennsylvania Supreme Court would require a plaintiff to prove justifiable reliance in alleging deceptive conduct under the Pennsylvania's consumer protection law, the Unfair Trade Practices and Consumer Protection Law); <u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 854 A.2d 425, 438 (Pa. 2004).

The Court will rely on the plain meaning of the statute and will decline to go where no Pennsylvania court has gone before. <u>See</u> <u>Commonwealth v. McClintic</u>, 909 A.2d 1241, 1245 (Pa. 2006) (citing <u>Sternlicht v. Sternlicht</u>, 876 A.2d 904, 909 (Pa. 2005) and <u>Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec. Inc.)</u>, 770 A.2d 318, 322 (Pa. 2001)); 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.")

However, assuming <u>arguendo</u> reliance was required, the Court finds, as discussed earlier, that a reasonable jury could find that Plaintiffs presented sufficient evidence that State Farm and other related parties relied upon the fraudulent misrepresentations of Defendants and were injured as a consequence.

### 5. Causation

Defendants argue that Plaintiffs' evidence is legally insufficient because it fails to show what portion of the

payments Plaintiffs made in first and third party cases was for medical treatment that was unnecessary.  Defendants argue that Plaintiffs failed to present sufficient evidence demonstrating how much of the medical treatment was unnecessary.  They argue that Plaintiffs may only recover payments made as a result of Defendants' alleged fraud.

Defendants again rely on <u>Receivable Finance</u> for the proposition that the jury's damage award "was based on conjecture and speculation as to what amount [Plaintiffs paid and] the [D]efendants obtained through [Defendants'] fraud," therefore it "cannot be sustained." <u>Receivable Finance</u>, 502 F.3d at 414. Defendants argue at length that the jury awarded over four million dollars in compensatory damages without Plaintiffs presenting sufficient evidence relating to each Defendant's individual culpability. (Defs.' Br., doc. no. 828 at 36-38.)

In this case, Plaintiffs' expert witness, Dr. Gregory Mulford, testified that "[i]t was my opinion. . . that there is a disturbingly clear pattern of excessive inappropriate and medically unnecessary diagnostic testing, treatment, services and prescriptions that were consistently done in the charts that I reviewed."  (Trial Tr. at 94, Mar. 13, 2009.)  He also testified to having reviewed over two hundred files and identified various fraudulent patterns at Defendants' medical centers including provision of x-rays, CAT scans, MRIs, EMGs, prescription

medication, durable medical equipment and physical therapy in "the overwhelming majority" of cases.  (Id. at 95.)

At trial, Dr. Mulford was shown several of Defendants' office files and testified to the inappropriate patterns of treatment, prescriptions and testing.  (Id. at 100-102, 105, 119.)  For instance, Dr. Mulford examined the claim file of Kenneth Fairfax and called the pattern of treatment both "consistent" with the patterns of treatment throughout the claim files and "redundant" after reviewing records of Mr. Fairfax for several different accidents.  (Id. at 122-27.)  In fact, Dr. Mulford identified the records for Mr. Fairfax's three car accidents as a "good illustration" of the fraudulent patterns at issue.  (Id. at 127.)  Dr. Mulford testified that the repeated medical procedures were unjustified in Mr. Fairfax's case and Mr. Fairfax's case was emblematic of Defendants' consistent pattern of a deviation from the accepted standard of care in the medical practice.  (Id. at 128-29.)  Finally, Dr. Mulford testified that, only after reviewing the entirety of the claims files, was he able to identify that there was a systematic standard practice to improperly treat patients at Defendants' medical centers.  (Id. at 118, 129.)[14]

---

[14]    To the extent that Defendants argue that Plaintiffs failed to prove proximate cause between its third party damages claims and Defendants' activities, the Court finds that Plaintiffs were the target of the scheme thereby creating a direct relation between the injuries asserted and the injurious

Reviewing the record in a light most favorable to Plaintiffs, the prevailing party at trial, the Court cannot conclude that it is "critically deficient of that minimum quantity of evidence from which a jury might reasonable afford relief." Trabal, 269 F.3d at 249.

### 6. Defendants' counterclaim

Defendants claim they are entitled to judgment as a matter of law on their counterclaim because Plaintiffs failed to present legally sufficient evidence that any of the treatment provided to the counterclaim patients was medically unnecessary. Defendants claim they presented evidence about necessary and reasonable medical treatment and services they provided to patients and seek due payment from State Farm under 75 Pa. C.S. § 1716. (Defs.' Br., doc. no. 828 at 40-41.) In support, Defendants cite Jeffrey Lincow's testimony regarding the counterclaim patient medical files, as well as the money owed by

---

conduct. "'[P]roximate cause exists when 'the RICO plaintiff's interest are the direct target of the alleged scheme. . . .'" State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr. Inc., No. 02-2789, 2007 WL 3224542 at *4 (E.D. Pa. Oct. 23, 2007) (citing Northwestern Human Servs., Inc. v. Panaccio, 2004 U.S. Dist. LEXIS 19147 at *15-16, *18-19 (E.D. Pa. 2004)). As noted in Hecht, a RICO act proximately causes injury if it was a "substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990) (citing O'Malley v. O'Neill, 887 F.2d 1557, 1561 (11th Cir. 1989)). Thus, Plaintiffs adequately presented proximate cause and Defendants' assertion fails.

State Farm for the services rendered.  Defendants also claim they provided expert testimony to prove that the treatment of these patients was reasonable and necessary.  (Id. at 42-45.)

Plaintiffs counter that the jury had before it legally sufficient evidence to evaluate Defendants' counterclaim. Specifically, Plaintiffs point to: (1) the testimony of patients that received osteopathic manipulations not rendered by chiropractors; (2) examinations that were identified and billed for in medical records, but not rendered; and (3) medical records evidencing chiropractic treatment was billed for but not rendered.  (Pls.' Br, doc. no. 919 at 43-46.)  Moreover, Plaintiffs point to the testimony of Drs. Amy Landsman and Denise Shusterman who both testified that changes to their medical reports of patients were not authorized.  (See Trial Tr. at 96, 99-102, Mar. 9, 2009; Trial Tr. at 191-95,199, 205, Mar. 12, 2009.)

Plaintiffs argue, and the Court agrees, that the jury was in a position to judge the credibility of Jeffrey Lincow as well as the credibility and accuracy of the medical records upon which his testimony was premised.  The Court will "not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury[.]"  Parkway Garage, 5 F.3d at 691.  The Court cannot find that the record is "critically deficient of that minimum quantity of evidence from

which a jury might reasonably afford relief."  Trabal, 269 F.3d

at 249.

## C. Alleged trial errors

Defendants claim they are entitled to a new trial based

on several alleged errors committed by the Court.

### 1. Legal Standard

Whether any error committed by the court was harmless

is governed by Federal Rule of Civil Procedure 61.[15]  Trial

errors are considered harmless when "it is highly probable that

the error did not affect the outcome of the case."  McQueeney v.

Wilmington Trust Co., 779 F.2d 916, 917 (3d Cir. 1985).  "Unless

a substantial right of the party is affected," a

non-constitutional error in a civil case is harmless.  Linkstrom

v. Golden T. Farms, 883 F.2d 269, 269 (3d Cir. 1989).  "Absent a

showing of substantial injustice or prejudicial error, a new

trial is not warranted and it is the court's duty to respect a

---

[15]     Fed. R. Civ. P. 61, as amended in 2007, provides as
follows: Rule 61. Harmless Error

 Unless justice requires otherwise, no error in admitting
 or excluding evidence - or any other error by the court or
 a party - is ground for granting a new trial, for setting
 aside a verdict, or for vacating, modifying, or otherwise
 disturbing a judgment or order. At every stage of the
 proceeding, the court must disregard errors and defects
 that do not affect any party's substantial rights.

 Fed. R. Civ. P. 61; cf. Fed. R. Evid. 103(a) ("Error may not be
predicated upon a ruling which admits or excludes evidence unless
a substantial right of the party is affected.").

plausible jury verdict." <u>Montgomery County v. MicroVote Corp.</u>, 152 F. Supp. 2d 784, 795 (E.D. Pa. 2001).

The Court will consider each of Defendants' arguments in turn.

### 2. Admission of Exhibit P-77[16]

#### a. Objection at trial

_____

[16]    To the extent that Defendants argue Plaintiffs failed to lay a proper foundation for the introduction of the summary exhibit, P-77, Defendants have waived this argument by failing to object on this basis at trial.  A thorough examination of the record indicates that, at trial, Defendants did not object on the basis of proper foundation of the business records as potential hearsay.  (Trial Tr. at 24-54, Mar. 16, 2009.)  Defense counsel's objection to the exhibit, and Mr. Acornley's testimony that relied on the exhibit, was not lack of foundation, but was a prejudice argument based on the claim that he did not have the opportunity to review the claim files to impeach Mr. Acornley's testimony. (<u>Id.</u> at 44:13-18.)  Seemingly, Defendants now reference their hearsay objection to Exhibit P-77 in their pre-trial disclosures. (<u>See</u> Docs. no. 512, 523, Defendants' Objections to Plaintiffs' Amended Rule 26(a)(3).)  However, Defendants failed to raise a contemporaneous hearsay objection when Exhibit P-77 was introduced at trial. Fed. R. Civ. P. 103(a)(1).

Defendants failed to object to this piece of evidence on the basis of improper foundation at trial and, thus, this objection is waived for purposes of post-trial review.  <u>See</u> <u>Grace v. Mauser-Werke Gmbh</u>, 700 F. Supp. 1383, 1388 (E.D. Pa. 1988) (holding that because plaintiff's counsel did not object to specific questions asked of expert at trial, objections to those questions are waived); <u>see also</u> <u>Gov't of the Virgin Islands v. Archibald</u>, 987 F.2d 180, 184 (3d Cir. 1993) ("If a party fails to object in a timely fashion, the objection is waived and we will review the admission of evidence only for plain error.").

Defendants claim that they were prejudiced when the Court admitted Exhibit P-77, an exhibit summarizing claim payments made in third party cases and relied upon by Plaintiffs' witness, Mr. Acornley. (Defs.' Br., doc. no. 828 at 46-57.) Defendants objected at trial that Plaintiffs had not provided Defendants with copies of the actual claim files to which the summary related. (See Trial Tr. at 24-54, Mar. 16, 2009.) Lengthy argument ensued wherein Plaintiffs responded that these documents were disclosed to Defendants more than two years before trial, the documents were housed at the law offices of Plaintiffs' counsel and were available to be reviewed by Defense counsel. (Id.; see also Pls.' Br., doc. no. 919 at 47 ("the first disclosure of Plaintiffs, sent to opposing parties on July 30, 2006, identified that '[r]ecords are stored at the law offices of Goldberg, Miller & Rubin, P.C. and may be reviewed by counsel or will be forwarded to counsel upon request.'").)

Plaintiffs also aver that they disclosed the description of a corporate designee who was expected to testify at trial in March 2007 and disclosed versions of the third party cases summaries in May of 2007. Finally, in the Plaintiffs' second amended Rule 26(a)(3) disclosure, Plaintiffs disclosed Exhibit P-77 and labeled it as "Exhibit B to Plaintiffs' Second Supplemental Responses to Defendants' Interrogatories – 3rd Party Payments/Damages." (See doc. no. 534.) Plaintiffs argue that

defense counsel failed to review the claim files which had been made available for several years and only unreasonably requested production of these files during trial.

At trial, the Court overruled Defendants' objection and admitted Exhibit P-77. (Trial Tr. at 54-55, Mar. 16, 2009.) The Court held, "[t]he objection will be overruled on the following basis. . . . It does appear that the documents have been referred to at the very least, if not specifically identified by the plaintiff[s], and that the defendant[s] did not request specific access either by way of Rule 34 or by way of the mechanism which appears to be available under Rule 26[]. So, that disclosure seems to have been satisfied in this case." (Id. at 53-54.)

### b. Rule 1006

Fed. R. Evid. 1006 provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

"Courts have cautioned that Rule 1006 is not a back-door vehicle for the introduction of evidence which is otherwise inadmissible, and that the voluminous evidence that is the subject of the summary must be independently admissible." Eichorn v. AT&T Corp., 484 F.3d 644, 650 (3d Cir. 2007); see also United States v. Pelullo, 964 F.2d 193, 204-05 (3d Cir. 1992).

### c. Analysis

Rule 1006 provides two scenarios for the production of documents supporting the information contained in the summary chart by the party seeking to rely upon them at trial. Before trial, at a reasonable time and place or, at trial, the production may be ordered by the court. The two scenarios are not mutually exclusive. Under either scenario, Defendants' argument fails. One, the supporting documents were made available prior to trial; two, Defendants failed to specifically request production of the documents at trial.

### 1. Documents were made available pre-trial

The Court finds that, at least two years before the trial, Plaintiffs advised Defendants that the documents were available for review at Plaintiffs' counsel's law office, or would be forwarded upon request. This degree of availability certainly meets the requirements of a reasonable time and place. See, e.g., United States v. Jamieson, 427 F.3d 394, 410-11 (6th Cir. 2005) (notice of the last of the record summaries, over one month before trial began, was timely); Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 753 (7th Cir. 2005) (thirty days before trial deemed "reasonable time" when the defendant's law firm could have "easily spot checked the summaries for accuracy" but failed to do so).

During trial, defense counsel, Mr. Todd, admitted, "I

acknowledge, Your Honor, that they identified third party claim files in discovery. I acknowledge that I got 40 of them . . . . I took the 40 in essence as a sampling . . . . because I couldn't look at 600 or whatever the number [of third party claim files] was. . . ." (Trial Tr. at 42-43, Mar. 16, 2009.)[17] Furthermore, Plaintiffs disclosed Exhibit P-77, and their intention to use a summary chart of the patient files, in pre-trial disclosures, on at least two occasions. (See docs. no. 534, 472.) Under these circumstances, Plaintiffs satisfied their duty under Rule 1006 to make available the documents supplying the information contained in the summary chart before trial.[18]

### 2. Defendants failed to request production of the documents at trial

---

[17]     If the documents were not produced for Defendants, the appropriate course of action would have been a request for a motion to compel the production of documents and, based on the extensive docket of this case, both parties made use of this procedure frequently. Defendants' argument does not suggest that the admission of the testimony was improper because the Plaintiffs' failed to produce documentation after being compelled by the Court to do so. See Midtown Med., 2007 WL 3224542 at *4 (finding Defendants should have moved to compel documents that they argued were not made available under Rule 1006).

[18]     Unlike in Air Safety, a case cited by Defendants, in this case State Farm identified the source of the summary, and its intent to use this exhibit, several months before trial. Air Safety, Inc. v. Roman Catholic Archbishop of Boston, 94 F.3d 1, 8 (1st Cir. 1996) (internal quotations omitted) (in Massachusetts trial, records were not "made available" under Rule 1006 when they were held at party's office in Illinois and were not identified as the source of the summaries until trial); (see also Plaintiff's pretrial memorandum, doc. no. 472 at Ex. A List of Trial exhibits; Plaintiffs' Second Amended Rule 26(a)(3) Disclosure, doc. no. 534 at Ex. A. List of Trial exhibits).

Rule 1006 also provides "[t]he court may order that [the documents] be produced in court."  Fed. R. Evid. 1006; <u>see also</u> <u>United States v. Strissel</u>, 920 F.2d 1162, 1163 (4th Cir. 1990) (last sentence of Rule 1006 indicates that the trial judge has discretion to order underlying documentation to be produced in court, but the rule does not require that the underlying evidence be introduced into evidence in all cases).  Thus, if deemed necessary at trial, the court may require the documents to be produced in court.

Although there was considerable discussion as to whether the documents had been made available before trial and whether they should be brought to Court, at no point during this discussion did Defendants specifically request the Court to order that the documents be produced in court.  (Trial Tr. at 25-55, Mar. 16, 2009.)[19]  Accordingly, the Court did not err in failing to order the Plaintiffs to produce the documents in court.

### 3. No unfair prejudice to Defendants

Even, assuming <u>arguendo</u>, the Court erred by not ordering Plaintiffs to produce the claim files at trial, Defendants did not suffer any unfair prejudice. "The purpose of

---

[19]     Despite Defendants' lengthy argument dedicated to this objection and Defendants' conclusion that the Court "refused to order" the documents be brought to court, at no point do Defendants identify where and when this request to produce was made and how the Court refused such a specific request from Defendants.

[Rule 1006's requirement that a summary is made available to the opposing party for examination] is to provide the opposing party who desires to attack the authenticity of accuracy of the summary with the opportunity to prepare for cross-examination or offer rebuttal evidence." <u>Becker v. Arco Chemical Co</u>, 15 F. Supp. 2d 600, 617 (E.D. Pa. 1998), <u>rev'd in part on other grounds</u>, 207 F.3d 176 (3d Cir. 2000).

In this case, defense counsel was afforded an opportunity at effective cross-examination on the basis of information that was available to Defendants at trial. Defense counsel admits he had 40 of the 141 claim files identified in P-77,[20] but he did not question Mr. Acornley or Mr. Hopkins about any of the specific claims during cross-examination. Thus, the Court finds that any error in admitting the P-77 summary exhibit did not prejudice Defendants' cross-examination or affect their substantial rights.

### 3. Jury Instructions

#### a. Legal Standard

---

[20]     Plaintiffs contend that defense counsel had access to approximately 41 of these claim files. (Pls.' Br., doc. no. 919 at 52.)  Defendants aver, by way of declaration attached to their rebuttal brief, that only 8 of the over 40 claims produced by Defendants were among the claims referenced in Exhibit P-77. (Defs.' Br, doc. no. 939, Decl. of K. Albert at ¶ 19.) Defendants also aver that, after inspection, none of the eight claims produced by Plaintiffs, and referenced in Exhibit P-77, contains any information about payments made in any of the other third party cases identified in Exhibit P-77.

"A party is entitled to a jury instruction that accurately and fairly sets forth the current status of the law." Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995); see also McPhee v. Reichel, 461 F.2d 947, 950 (3d Cir. 1972) ("It is the responsibility of the trial judge to provide the jury with a clear and accurate statement of the law . . ."); Resolution Trust Corp. v. Eason, 17 F.3d 1126, 1132 (8th Cir. 1994) (as long as the entire charge fairly and adequately contains law applicable to the case, judgment will not be disturbed on appeal); Harrison v. Otis Elevator Co., 935 F.2d 714, 717 (5th Cir. 1991) (trial court has broad discretion to compose jury instructions as long as they are fundamentally accurate and not misleading).

Additionally, "[n]o litigant has the right to a jury instruction of its choice, or precisely in the manner and words of its own preference." Douglas, 50 F.3d at 1233; see also Heller Int'l Corp. v. Sharp, 974 F.2d 850, 860 (7th Cir. 1992) (district court has substantial discretion with respect to specific wording of jury instructions and need not give proposed instruction if essential points are covered by those that are given); Anderson v. Branen, 17 F.3d 552, 559-60 (2d Cir. 1994) (litigant is entitled to instruction that correctly reflects applicable law and sufficiently covers essential issues, but party is not entitled to prescribe exact language of that charge).

## b. RICO conspiracy jury instruction

The Court instructed the jury on § 1962(d) verbatim from the Fifth Circuit's Pattern Jury Instructions. The jury instruction on this issue, <u>inter alia</u>, reads:

88. To establish a violation of Section 1962(d), State Farm must prove by a preponderance of the evidence:

1. That two or more persons in some way or manner came to a mutual understanding to attempt to accomplish a common and unlawful plan, that is that while being employed by or associated with an enterprise, they engaged in activities which affected interstate or foreign commerce, or conducted the affairs of the alleged enterprise through a pattern of racketeering activity, in the manner alleged; and
2. That the defendant knowingly and willfully became a member of a conspiracy by objectively indicating, through his words or actions, his agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity; and
3. That at least one of the conspirators committed at least one overt act during the existence of a conspiracy in an effort to accomplish some object or purpose of the conspiracy.

<u>See</u> Fifth Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 8.1 (2006).

Defendants argue that the instruction on RICO conspiracy was inadequate for two reasons. One, the Court failed to instruct the jury on the option of finding multiple conspiracies and that, therefore, some or all of Defendants may not be liable for RICO conspiracy. Two, the Court failed to instruct the jury that employees of a corporate entity who are acting within the scope of their employment cannot conspire with

each other or the corporate entity.

To that end, Defendants proposed the following jury instruction:

> A conspiracy cannot lie against a corporate entity for the concerted action of its employees, officers or directors who allegedly violate RICO on its behalf. Greenberg v. Tomlin, 816 F.Supp. 1039 (E.D. Pa. 1993). Employees of a corporation who are acting in the course and scope of their employment, cannot conspire with each other. Pioneer Contracting, Inc. v. Eastern Exterior Wall Systems, Inc., 2005 U.S. Dist. Lexis 5197 (E.D. Pa. 2005). If you find that defendants at all times relevant were acting within the course and scope of their employment for 7622 Medical Center, P.C., you must find in their favor on the conspiracy claim.

(Defs.' Proposed Jury Instructions, doc. no. 458 at unnumbered page 6.)

### c. Analysis

#### 1. The multiple conspiracy charge

Defendants were not entitled to a separate instruction on multiple conspiracies.

The Third Circuit has reiterated "[a] RICO enterprise may engage in a pattern of racketeering activity that consists of separate and distinct conspiracies." U.S. v. Irizarry, 341 F.3d 273, 292 n.7 (3d Cir. 2003) (citing United States v. Pungitore, 910 F.2d 1084, 1099-1101, 1134-35 (3d Cir. 1990)); see also United States v. Carrozza, 4 F.3d 70, 79 (1st Cir. 1993) (stating that a series of agreements that under pre-RICO law would constitute multiple conspiracies could under RICO be tried as a single enterprise conspiracy if the defendants have agreed to

commit a substantive RICO offense); <u>United States v. Ruggiero</u>,
726 F.2d 913, 923 (2d Cir. 1984) (holding that § 1962(d) does not
violate the principle prohibiting conviction of multiple
conspiracies under an indictment charging a single conspiracy);
<u>United States v. Friedman</u>, 854 F.2d 535, 562-63 (2d Cir. 1988)
("So long as the alleged RICO co-conspirators have agreed to
participate in the affairs of the same enterprise, the mere fact
that they do not conspire directly with each other does not
convert the single agreement to conduct the affairs of an
enterprise through a pattern of racketeering activity into
multiple conspiracies."); <u>United States v. Bibbero</u>, 749 F.2d 581,
587 (9th Cir. 1984) (a single conspiracy may involve several
subagreements or subgroups of conspirators).[21]

Here, Defendants argue that there was evidence of at
least two separate conspiracies – one among Defendants related to
first party claims and one among Defendants and attorneys related
to third party claims. Defendants contend the Court erred in
refusing to provide the requested instruction because, with
respect to the conspiracy involving first party claims, only
Defendants were involved in that alleged conspiracy and the jury
may have been required as a matter of law to find some or all of

---

[21]    While these are RICO criminal cases, the applicable law
of conspiracy is equally applicable to civil cases.  Moreover,
the only cases cited by the parties, which are specifically
relevant to RICO multiple conspiracies, are RICO criminal cases.

Defendants not guilty of RICO conspiracy.[22]

The objection has no merit.  Even if the jury concluded that there were separate and distinct conspiracies between Defendants and other co-conspirators, this did not preclude the jury from finding, under the jury charge, that Defendants engaged in a pattern of racketeering activity as a single enterprise conspiracy.  Irizarry, 341 F.3d at 292 n.7.

## 2. Intracorporate conspiracy charge

Defendants were not entitled to a separate instruction on intracorporate conspiracy.

Defendants argue that the jury could find that all Defendants were employees of Dr. Lincow, and therefore, some or all of Defendants could not have been found guilty of RICO conspiracy since employees of the same entity acting within the scope of their employment cannot conspire with each other or the corporate entity.

First, it is not clear that the proposed instruction

_____

[22]    Defendants cite Kemp, where the Third Circuit affirmed the conviction of a Philadelphia city government defendant and others, on multiple counts including conspiracy to commit honest services fraud.  United States v. Kemp, 500 F.3d 257, 287 (3d Cir. 2007).  Kemp is not on point.  In Kemp the issue was whether the allegations in the indictment (single conspiracy) and the proof at trial (multiple conspiracy) gave rise to a variance, and if so, whether the variance prejudiced Defendants' substantial rights.
       Here, by contrast, the issue is whether the jury charge on a RICO conspiracy claim accurately and fairly stated the applicable principles of law.

even expresses a correct point of law.  The Third Circuit has never decided whether the intracorporate conspiracy doctrine bars § 1962(d) claims.  The five circuits that have addressed the issue are split on the answer.  The Seventh, Ninth and Eleventh Circuits have held that the intracorporate conspiracy doctrine does not bar § 1962(d) claims.  See Ashland Oil, Inc. v. Arnett, 875 F.2d 1271, 1281 (7th Cir. 1989) (stating that in contrast to the goals of the antitrust laws, "intracorporate conspiracies do threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers"); Webster v. Omnitrition Int'l, Inc., 79 F.3d 776, 787 (9th Cir. 1996); Kirwin v. Price Communications Corp., 391 F.3d 1323 (11th Cir. 2004) ("Corporations and their agents are distinct entities and, thus, agents may be held liable for their own conspiratorial actions.").[23]  The Fourth and Eighth Circuits have reached the opposite conclusion.  See Detrick v. Panalpina, Inc., 108 F.3d 529, 544 (4th Cir. 1997); Fogie v. THORN Americas, Inc., 190 F.3d 889 (8th Cir. 1999).

Second, Defendants point to Pioneer and Greenberg, two

---

[23]     See also Mauriber v. Shearson/Am. Express, Inc., 567 F. Supp. 1231, 1241 (S.D.N.Y. 1983) (stating that where "action by an incorporated collection of individuals creates the 'group danger' at which conspiracy liability is aimed, . . . the view of the corporation as a single legal actor becomes a fiction without a purpose" (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 603 (5th Cir. 1981))); Fabrico Mfg. Corp. v. Wilson Sporting Goods, Co., 1985 WL 1474, at *2 (N.D. Ill. May 22, 1985).

district court opinions in support of their argument.  See
Pioneer Contracting, Inc. v. Eastern Exterior Wall Sys., Inc.,
No. 04-1437, 2005 WL 747221, at *1 (E.D. Pa. Mar. 29, 2005)
(noting that a "conspiracy cannot lie against the corporation for
the actions of its employees who violate RICO on its behalf.
Moreover, employees of a corporation, while acting in the course
and scope of their employment, cannot conspire with each other");
Greenberg v. Tomlin, 816 F.Supp. 1039, 1050 (E.D. Pa. 1993).

        These cases are distinguishable.  Pioneer involved an
alleged vertical conspiracy between a corporate entity and two of
its employees. Pioneer, 2005 WL 747221, at *9.  Greenberg,
likewise, involved a corporate entity who was charged with
conspiring with its own officers. 816 F. Supp. at 1045, 1050
("both the pleadings and the record reveal that the foundation
for the Plaintiffs' Section 1962(d) claims is the alleged
conspiracy between [individual Defendants] and the corporate
defendant").   Here, on the other hand, the evidence at trial
showed that the conspiracy was not a straight vertical conspiracy
between a single corporate entity and its employees.  Rather, the
alleged conspiracy is one between several distinct corporate
entities and their employees.[24]

_____

        [24]    Defendants do not challenge Plaintiffs' assertion that
(1) Dr. Lincow was an employee of Medical Management Consulting,
Inc.; (2) Drs. Lawrence Forman and Stephen Sacks were not
employees of any of the Defendant corporations, but rather
independent contractors; (3) Stephen Hirsh was an employee of

Moreover, unlike Pioneer and Greenberg, there was substantial evidence of Defendants acting in pursuit of their own interests and not for the benefit of the corporation. See e.g., Castle v. Crouse, No. 03-5252, 2004 WL 257389, at *6 (E.D. Pa. Feb. 11, 2004) (noting an exception to the rule against intra-corporate conspiracies exists where the employees act in pursuit of their own interests and not for the benefit of the corporation). These actions include, but are not limited to: changing reports and records of other providers without their knowledge or consent; prescribing pharmaceuticals pursuant to an illegal kickback agreement; rendering of inaccurate medical reports listing improper diagnoses and the prescription of unnecessary testing, treatment, medications and equipments. These types of actions, evidence to all of which was presented at trial, demonstrate Defendants were acting in pursuit of their own financial interests. Thus, Pioneer and Greenberg are further distinguishable from the instant case.

Under these circumstances, Defendants have not established their proposed instruction expresses a correct point

Defendant, Lolo, Inc; and (4) Drs. Richard Mintz, Stephen Hennessey and Richard Butow were only employees of 7622 Medical Center, P.C. (Compare Pls. Br, doc. no. 919 at 56-57, 59, 62; with Defs.' Br., docs. no. 828 at 64-65; doc. no. 939 at 7-8.) In short, Defendants have failed to point to evidence of record to show that the alleged conspiracies were vertical, i.e. involving a single corporation and its employees.

of law or that the facts of this case warrant such an instruction.

### d. Conclusion

The jury charge as given, taken verbatim from the Fifth Circuit Pattern Jury Instructions, reflects applicable law and sufficiently covers the essential issues including: (1) mutual understanding of Defendants to accomplish a common and unlawful plan; (2) Defendants knowingly and wilfully became members of the conspiracy by objectively indicating agreement to participate; and (3) that at least one of the conspirators committed at least one overt act during the conspiracy. Defendants have failed to demonstrate that their proposed additional instruction as to the issues of multiple conspiracies or intracorporate conspiracy is required under existing Third Circuit law and the facts of this case. Defendants have not met their burden of showing that the failure to give their proposed instruction warrants a new trial.

### 4. Cumulative effect of errors

Defendants argue that they are entitled to a new trial because of the cumulative effect of the Court's errors whereby they incorporate their previous arguments regarding the admission of Exhibit P-77 and Defendants' proposed RICO conspiracy jury instruction. In addition, Defendants also maintain that the Court erred when it: (1) allowed the jury to view the videotaped

deposition of Dr. Lincow; (2) refused to allow them to call Mr. Gene Veno as a witness; (3) refused to admit Ms. Dora Dixon-Jefferson's deposition testimony; and (4) refused to permit defense counsel to effectively impeach Mr. Steven Hirsh.  Each objection will be analyzed separately.

### a. Videotaped deposition of Dr. Lincow

In addition to their previous argument, Defendants maintain that the Court erred in permitting Plaintiffs to use portions of the videotaped deposition of Dr. Lincow. (Defs.' Br. at 66.)  Defendants believe that Plaintiffs should not have been permitted to show the videotaped deposition of Dr. Lincow to the jury, where he became upset and unruly, when he was otherwise available to testify.  Defendants claim that Plaintiffs only purpose in using the videotape was to inflame the jury with images of Dr. Lincow acting inappropriately where such images had no proper evidentiary value.

Dr. Lincow's deposition was properly admitted as an admission by party opponent.  Fed. R. Evid. 801(d)(2).  The Court agrees with Plaintiffs and finds that the videotaped deposition of Dr. Lincow was also properly admitted under Fed. R. Civ. P. 32(a)(3) (depositions of a party may be used for any purpose). Defendants had notice that the deposition was being videotaped and could be used at trial.  Dr. Lincow had served as an expert witness at several trials and knew the purpose of a deposition.

That Dr. Lincow may have come to regret his boorish behavior at the deposition is not grounds for excluding it. In the final analysis, a deposition is a court proceeding and a witness and counsel are responsible for how they behave at depositions. See GMAC Bank v. HTFC Corp., 248 F.R.D. 182 (E.D. Pa. 2008) (Robreno, J.) (sanctioning a party and his counsel for conduct at a deposition). The Court finds that it did not err in permitting Plaintiffs to play portions of Dr. Lincow's videotaped deposition at trial.

### b. Gene Veno's testimony

Defendants claim the Court erred in refusing to allow Defendants to call Mr. Gene Veno as a witness. Defendants claim that Mr. Veno is the Executive Vice President of the Pennsylvania Chiropractic Association and would have testified that, upon receiving official notice from the Pennsylvania Insurance Department, the Chiropractic Association informed its members that they were authorized to delegate adjunctive procedures to unlicensed staff members under the Pennsylvania Chiropractice Practice Act and that it was common practice in the chiropractic community to do so. Defendants believe Mr. Veno's testimony was highly probative on the issue of Defendants' lack of intent to commit fraud.

At trial, Plaintiffs moved to preclude Mr. Veno's testimony and the Court granted Plaintiffs' motion. (Doc. no.

545.)  Mr. Veno's proposed testimony was that of an expert witness.  However,  Mr. Veno had not been identified as an expert witness and, therefore, had not complied with Fed R. Civ. P. 26(a)(2).[25]

In any event, as contemplated by the Court's order, the parties later stipulated to a letter between Mr. Veno and the insurance department.  Defense counsel used this document at trial, which essentially presented Mr. Veno's opinion to the jury.  The Court did not err when it precluded Mr. Veno's testimony.

### c. Dora Dixon-Jefferson's testimony

Defendants claim that the Court erred when it refused to admit Ms. Dora Dixon-Jefferson's deposition testimony. Defendants claim that Ms. Dixon-Jefferson would have testified that, as a result of the diagnostic services she received from Defendants, it was discovered that she had lung cancer. Defendants claim that her testimony was important to contradicting Plaintiffs' argument that Defendants' medical treatments had no medical purpose.  Plaintiffs moved to preclude Ms. Dixon-Jefferson's testimony and the Court later entered an order denying State Farm's motion as moot because she was not called as a witness at trial (doc. no. 586).

---

[25]    Whether Mr. Veno was qualified to give testimony about the state of the law in Pennsylvania, or his opinion of the law as applied to chiropractors, is not dispositive.

Defendants now claim that Ms. Dixon-Jefferson was not called as a witness because she was suffering medical complications as a result of her cancer and "counsel for Defendants requested that Ms. Dixon-Jefferson's oral deposition be introduced into evidence." (Defs.' Mot., doc. no. 613 at ¶ 83.) Defendants then claim that the Court refused to admit her deposition, "apparently because the Court believed its prejudicial impact outweighed its probative value." (Id. at ¶ 83.) However, Defendants point to nothing in the record to support their claim that they requested the introduction of her oral deposition or that such a request was denied. Accordingly, the Court relies on its March 23, 2009, order denying Plaintiffs' motion as moot because Defendants did not call Ms. Dixon-Jefferson as a witness. The Court finds no error in precluding Ms. Dixon-Jefferson's testimony.

### d. Steven Hirsch's cross-examination[26]

---

[26]     Mr. Hirsh was a licensed pharmacist who worked at Ogontz Pharmacy, located in Dr. Lincow's 7622 Professional Building.  Ogontz Pharmacy filled medical prescriptions for patients of 7622 Professional Building and 1900 SG Associates. Mr. Hirsh is also a Defendant in this case.  He did not defend himself in this trial and a default judgment was entered against him.

Mr. Hirsh also pleaded guilty to wire fraud and aiding and abetting, stemming from a scheme he devised to defraud third-party payors and claims processors in the amount of approximately $750,000 by falsely billing those organizations for reimbursements for prescription medications that were never dispensed to patients, in violation of 18 U.S.C. § 1343.  See United States v. Hirsh, No. 03-58.  Mr. Hirsh served a one-year

Plaintiffs called Mr. Steven Hirsch ("Hirsch") as a witness during trial. Hirsh testified that Dr. Mintz prescribed medication for patients treated by other Defendants. (Trial Tr. at 8, 10, 25, Mar. 13, 2009.) Hirsh identified three prescriptions bearing the type-written name of the 7622 Medical Center and Dr. Mintz at the top. (Id. at 9-16.) Hirsch testified that the initialed signature at the bottom of the three prescriptions were not that of Dr. Mintz and must have been written by someone else.

Defendants sought to impeach Hirsch by calling into question his identification of the prescriptions and negate Plaintiffs' contentions that Dr. Mintz was writing prescriptions for patients seen by other doctors at 7622 Medical Center. Defense counsel attempted to impeach Hirsch by using a blank prescription pad that was allegedly also used at the 7622 Medical Center. (Defs.' Mot., doc. no. 613 at ¶¶ 91-94.) The Court refused to allow defense counsel to cross-examine Hirsh using the blank prescription. (Id. at ¶¶ 95-96.) At the time, defense counsel agreed with the Court that this line of questioning could be reserved for his direct examination of Dr. Mintz. (Defs.' Mot., doc. no. 613 at ¶ 96.) Defense counsel admits he never

_____

prison term for this offense.

raised this issue again during Defendants' case-in-chief.[27]

Having failed to raise the issue with Dr. Mintz in direct examination, Defendants have waived their objection. Even if it was not waived, in the context of a four week trial and rulings on numerous motions, the exclusion of this testimony did not affect Defendants' substantial rights.

Accordingly, because the Court has found that it did not commit any of the alleged errors, the Court concludes there has been no cumulative prejudicial effect of the alleged errors.

**D. Defendant Mintz's argument**

Defendant Mintz has separately briefed the Court in support of Defendants' motion for post-trial relief. Because many of his arguments are duplicative of issues already addressed, the Court will consider only his argument as they relate to the sufficiency of the evidence Plaintiffs presented against him at trial.

**1. Procedural background**

On August 28, 2009, Defendant Dr. Richard Mintz

---

[27] Neither party references where in the transcript the Court refused to allow defense counsel to use the blank prescription or where defense counsel agreed to reserve the line of questioning for his direct examination. Indeed, the trial transcript contains no such objection or sidebar discussion. (Trial Tr. at 1-48, Mar. 13, 2009.) However, both parties agree the Court agreed to revisit the issue during direct examination and defense counsel failed to raise this issue during Defendants' case-in-chief. (Defs.' Mot., doc. no. 613 at ¶¶ 95-96; Pls.' Br., doc. no. 919 at 67-68.)

("Mintz") filed a separate brief in support of Defendants' motion for post-trial relief (doc. no. 842). On November 5, 2009, Plaintiffs submitted their brief in opposition to Mintz's brief in support of the motion for post-trial relief (doc. no. 918). On November 25, 2009, this Court issued a stipulation and order requiring Defendants to submit their reply to Plaintiffs' Brief in opposition by December 7, 2009 (doc. no. 938). On December 7, 2009, Richard Mintz filed a reply to Plaintiffs' Opposition Brief (doc. no. 945). On December 10, 2009, Mintz filed a second reply to Plaintiffs' opposition brief (doc. no. 952).

Plaintiffs move to strike Mintz's second reply brief and move for leave to file a surreply to Mintz's reply brief (doc. no. 958). Defendant Mintz, in response to Plaintiffs' motion to strike, avers that the incorrect version of his brief was filed on December 7, 2009. (Mintz Resp., doc. no. 962 at ¶ 7.) Accordingly, the Court will deny Plaintiffs' motion to strike Defendant Mintz's second reply brief (doc. no. 958) and the Court will refer only to his second reply brief (doc. no. 952). The Court will also grant Plaintiffs' motion to file a surreply and will consider this brief (doc. no. 958) in its analysis.

### 2. Waiver

Plaintiffs argue that trial counsel for Defendant Mintz failed to move for a directed verdict on the legal issues raised

by his new counsel in Mintz's post-trial motion. Similar to the Court's earlier analysis of Defendant's waiver, <u>see</u> discussion <u>supra</u>, Defendant Mintz has only specifically identified the issue of the distinctiveness requirement of RICO in Defendants' Rule 50(a) motion.  Accordingly, aside from the issue of RICO distinctiveness, Mintz's motion for judgment as a matter of law based upon the alleged insufficiency of the evidence to support Plaintiffs' claim must be denied.

Even if Defendant Mintz had properly moved for judgment as a matter of law based on the sufficiency of Plaintiffs' evidence, the Court finds that the motion would still fail.  For the sake of completeness, the Court will analyze Mintz's arguments regardless of the issue of waiver.

### 3. Sufficiency of the evidence against Mintz

The great majority of Mintz's brief is premised on his contention that Plaintiffs failed to present sufficient evidence that he knowingly participated in a scheme to defraud Plaintiffs.[28]  Mintz argues he is entitled to judgment as a matter of law because Plaintiffs failed to prove their claim

---

[28]    Mintz chose to be represented by common counsel for all Defendants at trial.  At trial, all Defendants held to the common strategy that no wrongful conduct had occurred. (<u>See</u> <u>supra</u> n.1) After trial, and with the assistance of new counsel, and in hindsight, he has raised several new arguments which more particularly address whether Mintz participated in such conduct. However, Mintz may not now belatedly assert new objections that his trial counsel did not pursue at trial.

against him under RICO, Pennsylvania's Insurance Fraud Act and common law fraud. Accordingly, he argues that the evidence was insufficient to sustain a damages award against him.

Plaintiffs argue that they did prove Mintz knowingly and willingly participated in the scheme to defraud Plaintiffs. Plaintiffs argue they presented substantial evidence including, but not limited to: (1) the writing of prescriptions for patients that Mintz did not personally examine as part of the "kickback arrangement" with Dr. Forman and Mr. Hirsh; (2) allowing others to use his prescription pad to write prescriptions in his (Mintz's) name; and (3) Mintz performed unnecessary testing on patients who had been referred by Dr. Lincow. (Pls.' Br., doc. no. 918 at 11.)

Reviewing the record in a light most favorable to Plaintiffs, the Court cannot conclude that it is "critically deficient of that minimum quantity of evidence from which a jury might reasonable afford relief." Trabal, 269 F.3d at 249. Mintz testified he was a full time employee of 7622 Medical and he was familiar with the administrative practices and procedures at the office. (Trial Tr. at 107-10, Mar. 13, 2009.) Mintz also testified to merging his practice with Dr. Lincow and received 90% of his referrals of accident patients from Dr. Lincow. (Id. at 121-22.) Mintz also testified that he was aware Dr. Forman was unable to legally write prescriptions for medications. (Id.

at 143-45.)  Mintz provided the 7622 Medical practice a signature
stamp of his.  (Id. at 122.)  Mintz testified that he agreed to
write prescriptions for Dr. Forman's patients even though he did
not see or examine the patients.  (Id. at 143-45.)  Dr. Forman
also testified that Mintz ordered medications for patients he did
not see.  (Trial Tr. at 146-148, Mar. 5, 2009.)  Finally, Steven
Hirsh testified that Mintz prescribed medication for patients
treated by other Defendants.  (Trial Tr. at 8, 10, 25 Mar. 13,
2009; see also exhibits P-30, P-100, P-109, P-77, P-12, P-20.)

Based on these facts, a reasonable jury had sufficient
evidence to determine that Mintz knowingly and willfully
participated in the scheme to defraud State Farm.  Plaintiffs
provided sufficient evidence regarding Mintz to prove their claim
against him under RICO, Pennsylvania's Insurance Fraud Act and
common law fraud.

## IV. DAMAGES

### A.  Background

The jury awarded Plaintiffs damages in the amount of
$4,049,741.00 for statutory insurance fraud, common law fraud and
civil RICO violations, based on inaccurate medical records and
billing.  The jury also awarded punitive damages as follows:
Arnold Lincow, D.O, in the amount of $5,000,000.00; Lawrence
Forman, D.O., in the amount of $600,000; Richard Mintz, D.O., in
the amount of $600,000; Stephen Hennessy, D.C., in the amount of

$600,000; Richard Butow, D.C., in the amount of $600,000; 7622 Medical Center, P.C., doing business as 1900 S.G. Associates and Allied Medical Group, in the amount of $2,500,000; Medical Management Consulting, Inc., in the amount of $500,000; Allied Medical Group, P.C., in the amount of $500,000; Jefron X-Ray, Inc., in the amount of $500,000.  Judgment was entered on March 26, 2009. (Doc. no. 593.)

Defendants make several arguments related to the damages awarded in this case.  Defendants argue that, in the event the Court concludes Defendants are not entitled to judgment as a matter of law and/or a new trial, the Court should nonetheless refuse to treble the jury's $4,049,741.00 compensatory damage award.

Drawing all reasonable inferences in favor of the Plaintiffs, the party who prevailed at trial, there is a reasonable basis to uphold the award.  The compensatory award reflects an attempt by the jury to allocate the total damages award jointly and severally against all Defendants.  The jury interrogatories further reflect the jury conclusively found all Defendants had individually violated: (1) 18 U.S.C. § 1962(c) for damages; (2) § 1962(d) for conspiracy; (3) 18 Pa. C.S.A. §4117; and (4) common law fraud.  The jury was instructed, by agreement of the parties, that if it was to award damages, if at all, it would be jointly and severally against all Defendants.  Moreover,

the $11.4 million in punitive damages is awarded individually, depending on the degree of culpability by each Defendant. (Doc. no. 593.)  There is nothing to suggest that the jury did not understand the law regarding liability.  Rather, the jury found all Defendants liable on all counts presented to them for deliberation.  The Court is persuaded that the jury's crafted award, viewed as a whole, is reasonable and fully supported by the record.

### B. Damages evidence

Defendants argue that the evidence regarding damages was not sufficient.  Specifically, they argue that Plaintiffs failed to prove cognizable damages under RICO, common law fraud and statutory fraud.  Defendants reiterate their argument that Plaintiffs presented no evidence that State Farm actually relied upon the patients' medical records when paying first-party claims or resolving third party claims.

As detailed above, Plaintiffs presented evidence of the actual loss caused by Defendants.  Mr. Acornley's testimony, as well as other presented exhibits, sufficiently identified payments made to Defendants as well as other payments as a result of the fraudulent records.  The jury had sufficient evidence to determine that all of the treatment and testing was fraudulent, thereby properly awarding Plaintiffs compensatory damages of more than $4 million.

## C. Election between treble and punitive damages

The jury awarded $11.4 million in punitive damages. Trebling the compensatory damages would amount to $12,149,223.00. Defendants argue that Plaintiffs must choose between the treble damages under RICO or the punitive damages for the common law fraud violation. Plaintiffs agree and have indicated that, to the extent that they have been awarded both sets of damages, they elect to receive treble damages. (Pls.' Br., doc. no. 919 at 68.) Because Plaintiffs have indicated they elect to receive treble damages, the Court does not analyze Defendants' arguments that the punitive damage award violates due process or should be reduced.

## D. Motion to amend the judgment to include Steven Hirsh and Lolo, Inc. (doc. no. 615)

On April 27, 2009, Plaintiffs filed a sealed motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e) (doc. no. 615). Plaintiffs request that this Court alter or amend the judgment to include Steven Hirsh and Lolo, Inc., as a default judgment was entered against them for both their failure to appear at trial and defend the claims against them. Plaintiffs believe that both Hirsh and Lolo should be jointly and severally liable under the judgment entered by the Court.

Plaintiffs originally instituted this action against Defendants, including Steven Hirsh and Lolo, Inc. These two Defendants did not respond to the action. The Court subsequently

entered default judgments against them on March 25, 2009. (See doc. no. 592.) Plaintiffs argue that the parties are deemed joint tortfeasors and they should be jointly and severally liable for compensatory damages.

Defendants Steven Hirsh and Lolo, Inc., as well as the other Defendants, have not responded to this motion. The Court will grant this motion and hold Steven Hirsh and Lolo, Inc. liable under the judgement.

### E. Motion to treble damages (doc. no. 615)

#### 1. Plaintiffs' argument

Plaintiffs move to have their compensatory damages trebled under the Pennsylvania Insurance Fraud Statute and RICO. 18 Pa. C.S. § 4117(g) provides that "[a]n insurer may recover treble damages if the Court determines that the defendant has engaged in a patten of violating this section." RICO provides treble damages, attorneys' fees, and costs of suit "for any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c).

#### 2. Defendants' opposition

Defendants, except for Mintz, did not file a formal opposition to the motion to treble. (Doc. no. 662.) Mintz argues that Plaintiffs are not entitled to treble damages because they did not prove liability under RICO or the Pennsylvania Insurance Fraud statute against any Defendant. He argues that

the basis for compensatory damages is unclear and, based on the absence of sufficient evidence, should be vacated. Moreover, he notes that trebling of a compensatory award under the Insurance Fraud Act is only permissible, not mandatory as Plaintiffs suggest. Finally, Mintz argues that there is no joint and several liability among Defendants for any statutory violation and any decision to treble the compensatory award against all Defendants would be erroneous.[29]

### 3. Analysis

Because Plaintiffs prevailed on their civil RICO claims, § 1964(c) dictates the award of treble damages, in addition to costs and attorneys' fees.

Plaintiffs also prevailed on the Pennsylvania Statutory

_____

[29] Defendant Mintz's argument that there is no statutory provision allowing for joint and several liability is without merit. There is no requirement for district courts to instruct juries to award damages against each defendant separately and individually. Although there is little direct law on this point, there are numerous RICO criminal forfeiture cases which indicate that the nature of the RICO offense mandates joint and several liability. See Fleischhauer v. Feltner, 879 F.2d 1290, 1301 (6th Cir. 1989); United States v. Caporale, 806 F.2d 1487, 1506-09 (11th Cir. 1986), cert. denied, 482 U.S. 917 (1987); United States v. Benevento, 663 F.Supp. 1115, 1118-19 (S.D.N.Y. 1987), 836 F.2d 129 (2d Cir. 1988); see also Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 272 (9th Cir. 1988) (civil RICO liability assessed joint and severally).

Defendants all participated in the "enterprise" responsible for the RICO violations; awarding damages separately between each plaintiff and defendant is inconsistent with the nature of the injury Defendants inflicted and brings about a danger of multiplying damages before they are trebled.

Insurance Fraud claim, § 4117(g) similarly allows for the award of treble damages, which is discretionary.  In this case, the conduct for which Defendants were found liable was serious, occurred over a long period of time and was performed by licensed professionals while delivering medical services.  There is no just reason to forego trebling the damages in this case.

In this case, trebling the compensatory damages would lead to an award of $12,149,223.00.

**E. Plaintiffs' motion for attorneys' fees and costs (doc. no. 616)**

### 1. Plaintiffs' argument

Plaintiffs have also moved for attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c) and 18 Pa. C.S. § 4117(g).  Plaintiffs argue that § 1964(c) permits successful RICO plaintiffs to recover for attorneys' fees and costs and § 4117(g) provides that compensatory damages include "reasonable investigation expenses, costs of suit and attorney fees."  Plaintiffs argue that the jury returned a unanimous finding against all Defendants on all counts presented for jury consideration, including claims for violations of 18 U.S.C. § 1964 and § 4117.  Plaintiffs aver to have incurred attorneys' fees of $945,952.85 and costs of $219,745.35.[30]

---

[30]     Goldberg, Miller & Rubin, P.C. has prepared a long list from their invoices of the amount of time each attorney and paralegal spent on tasks related to the case.  Plaintiffs' counsel avers that the attorneys' fees and costs, are $945,952.85

## 2. Defendants' opposition

Defendants filed a joint opposition to the motion for attorneys' fees and costs (doc. no. 618). Defendants did not file a brief in support of this motion, but rather "reserved" the right to contest the amount of fees and costs at the hearing on May 26, 2009. The Court later limited the May 26, 2009, hearing to consider only the preliminary injunction to preserve Defendants' assets prior to execution (doc. no. 614). The Court, by order, stated it would consider these motions at a later date, after resolving Defendants' motion for post-trial relief (doc. no. 718). Defendants, other than Mintz, have provided no further collective briefing on the motions for attorneys fees or treble damages.

Defendant Mintz argues that as the prevailing party in this case, State Farm may be entitled to attorneys' fees under RICO and the Insurance Fraud Act but it not entitled to an award of attorneys' fees on its claim of common law fraud. (Doc. no. 662.). He argues the Insurance Fraud Act attorneys' fees are permissive, not mandatory. He believes that an additional award of fees would constitute a windfall.

Mintz argues that because the verdict did not specify under which theory of liability the compensatory damages award was rendered, the assessment of attorneys' fees is impossible.

and $219,745.35, respectively.

He argues that it is impossible to determine the amount of damages attributable to each Defendant and there is no basis for finding joint and several liability. Mintz claims the verdict must be vacated and, at the very least, a new trial on damages awarded.

### 3. Analysis

Both civil RICO and the Pennsylvania insurance law provide for an award of attorneys' fees and costs to the prevailing party. Plaintiffs filed their Complaint on October 13, 2005. The four week jury trial of this matter concluded three and a half years, later on March 26, 2009. The civil docket in this matter consists of over one thousand (1,000) entries. The jury returned a verdict for Plaintiffs on each count of the Complaint and rejected Defendants' counterclaim. Thus, this Court is persuaded that Plaintiffs' request is both reasonable and appropriate to the nature, extent, duration and success of this litigation.

Goldberg, Miller & Rubin, P.C. will be required to provide, at a later date, an updated affidavit demonstrating that the attorneys' billing rates and hours spent are within community standards and that the legal work was reasonable and necessary. Defendants will be given an opportunity to object before the Court rules on the amount of the fee.

## V. CONCLUSION

For the aforementioned reasons, Defendants' motion for post-trial relief is denied.  Plaintiffs' motion to alter or amend the judgment is granted.  Plaintiffs' motion for attorneys' fees and costs is granted.  An appropriate order follows.